I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY FIRST CLASS MAIL. POSTAGE PREPAID, TO ALL COUNSEL (OR PARTIES) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF RECORD IN THIS ACTION ON THIS DATE.

DATED: 3-19-13

DEPUTY CLERK

*CV 66 also mailed.



FILED
CLERK, U.S.D.C. SOUTHERN DIVISION

MAR 19 2013

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

RUBEN LUGO,

    Plaintiff,

vs.

P. COVELLO, et al.,

    Defendants.

Case No. CV 13-1329-ABC (RNB)

ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND

Plaintiff is a state prisoner currently incarcerated at the California Correctional Institution in Tehachapi, California. On March 4, 2013, he filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 after being granted leave to proceed in forma pauperis. The gravamen of plaintiff's claims is that, since 2009 when he was incarcerated at Ironwood State Prison in Blythe, state correctional authorities have violated his Fourteenth Amendment right to due process by confining him in a Secured Housing Unit ("SHU") "solely because of his illegally-obtained gang-associate validation." The Complaint also alleges violations of plaintiff's First Amendment and Eighth Amendment rights. Named in the Complaint as defendants in both their individual and official capacities are various state correctional officials who allegedly (a) were involved in plaintiff's gang validation and/or authored memos that were used for the gang validation, and/or (b) were involved in plaintiff's

1

1 administrative appeals.  The Complaint purports to allege seventeen separate causes
2 of action and to seek injunctive relief ordering plaintiff's release from SHU, as well
3 as compensatory and punitive damages.

4      In accordance with the terms of the "Prison Litigation Reform Act of 1995"
5 ("PLRA"), the Court now has screened the Complaint prior to ordering service, for
6 purposes of determining whether the action is frivolous or malicious; or fails to state
7 a claim on which relief may be granted; or seeks monetary relief against a defendant
8 who is immune from such relief.  See 28 U.S.C. §§ 1915(e)(2), 1915A(b); 42 U.S.C.
9 § 1997e(c)(1).

10      The Court's screening of the Complaint under the foregoing statutes is
11 governed by the following standards.  A complaint may be dismissed as a matter of
12 law for failure to state a claim for two reasons:  (1) lack of a cognizable legal theory;
13 or (2) insufficient facts under a cognizable legal theory.  See Balistreri v. Pacifica
14 Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  In determining whether a complaint
15 states a claim on which relief may be granted, allegations of material fact are taken
16 as true and construed in the light most favorable to the plaintiff.  See Love v. United
17 States, 915 F.2d 1242, 1245 (9th Cir. 1989).  Moreover, since plaintiff is appearing
18 pro se, the Court must construe the allegations of the Complaint liberally and must
19 afford plaintiff the benefit of any doubt.  See Karim-Panahi v. Los Angeles Police
20 Dep't, 839 F.2d 621, 623 (9th Cir. 1988).  However, "the liberal pleading standard
21 ... applies only to a plaintiff's factual allegations."  Neitze v. Williams, 490 U.S. 319,
22 330 n.9, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989).  "[A] liberal interpretation of a
23 civil rights complaint may not supply essential elements of the claim that were not
24 initially pled."  Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir.
25 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

26      Further, with respect to plaintiff's pleading burden, the Supreme Court has held
27 that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'
28 requires more than labels and conclusions, and a formulaic recitation of the elements

1   of a cause of action will not do. . . . Factual allegations must be enough to raise a

2   right to relief above the speculative level . . . on the assumption that all the allegations

3   in the complaint are true (even if doubtful in fact)." See Bell Atlantic Corp. v.

4   Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal

5   citations omitted, alteration in original); see also Ashcroft v. Iqbal, - U.S. -, 129 S. Ct.

6   1937, 1949, 173 L. Ed. 2d 868 (2009) (To avoid dismissal for failure to state a claim,

7   "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

8   to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff

9   pleads factual content that allows the court to draw the reasonable inference that the

10  defendant is liable for the misconduct alleged." (internal citation omitted)).

11      Thus, plaintiff must allege a minimum factual and legal basis for each claim

12  that is sufficient to give each defendant fair notice of what plaintiff's claims are and

13  the grounds upon which they rest.  See, e.g., Brazil v. United States Dep't of the

14  Navy, 66 F.3d 193, 199 (9th Cir. 1995); McKeever v. Block, 932 F.2d 795, 798 (9th

15  Cir. 1991).

16      After careful review and consideration of the Complaint and the exhibits

17  attached thereto[1] under the foregoing standards, the Court finds that its allegations are

18  insufficient to state any federal civil rights claim on which relief may be granted

19  against any named defendant.

20  //

21

22

---

23      [1]    The Court may consider the exhibits attached to the Complaint in

24  deciding the sufficiency of plaintiff's claims for relief. See Rouse v. United States

    Dep't of State, 548 F.3d 871, 879 n.10 (9th Cir. 2008) ("The complaint included all

25  exhibits attached thereto."); Hal Roach Studios v. Richard Feiner & Co., 896 F.2d

26  1542, 1555 n.19 (9th Cir. 1989) (documents attached to a complaint are incorporated

    therein by reference); Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir)

27  ("If a complaint is accompanied by attached documents, the court is not limited by the

28  allegations contained in the complaint."), cert. denied, 484 U.S. 944 (1987).

3

1

## DISCUSSION

2 | **I.**    <u>**The Eleventh Amendment bars plaintiff's claims for monetary damages**</u>

3      <u>**against the named defendants in their official capacities.**</u>

4      In <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 64-66, 109 S. Ct.

5 2304, 105 L. Ed. 2d 45 (1989), the Supreme Court held that states, state agencies, and

6 state officials sued in their official capacities are not persons subject to civil rights

7 suits under 42 U.S.C. § 1983. The Supreme Court reasoned that a suit against a state

8 official in his or her official capacity is a suit against the official's office, and as such

9 is no different from a suit against the State itself, which would be barred by the

10 Eleventh Amendment. See <u>id.</u>; <u>see also</u> <u>Romano v. Bible</u>, 169 F.3d 1182, 1185 (9th

11 Cir.), <u>cert. denied</u>, 528 U.S. 816 (1999); <u>Stivers v. Pierce</u>, 71 F.3d 732, 749 (9th Cir.

12 1995). In addition, "the Eleventh Amendment bars actions against state officers sued

13 in their official capacities for past alleged misconduct involving a complainant's

14 federally protected rights, where the nature of the relief sought is retroactive, <u>i.e.</u>,

15 money damages." <u>Bair v. Krug</u>, 853 F.2d 672, 675 (9th Cir. 1988).

16      To overcome the Eleventh Amendment bar on federal jurisdiction over suits

17 by individuals against a State and its instrumentalities, either the State must have

18 consented to waive its sovereign immunity or Congress must have abrogated it;

19 moreover, the State's consent or Congress' intent must be "unequivocally expressed."

20 See <u>Pennhurst State School & Hosp. v. Halderman</u>, 465 U.S. 89, 99-100, 104 S. Ct.

21 900, 79 L. Ed. 2d 67 (1984). While California has consented to be sued in its own

22 courts pursuant to the California Tort Claims Act, such consent does not constitute

23 consent to suit in federal court. See <u>BV Engineering v. Univ. of Cal., Los Angeles</u>,

24 858 F.2d 1394, 1396 (9th Cir. 1988), <u>cert. denied</u>, 489 U.S. 1090 (1989); <u>see also</u>

25 <u>Atascadero State Hosp. v. Scanlon</u>, 473 U.S. 234, 241, 105 S. Ct. 3142, 87 L. Ed. 2d

26 171 (1985) (holding that Art. III, § 5 of the California Constitution did not constitute

27 a waiver of California's Eleventh Amendment immunity). Furthermore, Congress has

28 not abrogated State sovereign immunity against suits under 42 U.S.C. § 1983.

1        Therefore, to the extent that plaintiff is purporting to seek monetary damages
2   from any of the named defendants in their official capacities, his claims are barred.

3

4   **II.**   **Plaintiff's allegations are insufficient to state a due process claim against**
5         **any of the named defendants based on their involvement in plaintiff's gang**
6         **validation.**

7        In order to state a claim against a particular defendant for violation of his civil
8   rights under 42 U.S.C. § 1983, plaintiff must allege that the defendant, acting under
9   color of state law, deprived plaintiff of a right guaranteed under the Constitution or
10  a federal statute. See Karim-Panahi, 839 F.2d at 624. "A person deprives another 'of
11  a constitutional right, within the meaning of section 1983, if he does an affirmative
12  act, participates in another's affirmative acts, or omits to perform an act which he is
13  legally required to do that causes the deprivation of which [the plaintiff complains].'"
14  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988), quoting Johnson v. Duffy, 588
15  F.2d 740, 743 (9th Cir. 1978).

16       Here, plaintiff's First, Second, Fourth, Fifth, Sixth, and Seventeenth Causes of
17  Action purport to be Fourteenth Amendment due process claims arising out of the
18  named defendants' involvement in plaintiff's gang validation, which has resulted in
19  his SHU confinement. (See Complaint at 14-16, 17-21, 29-30.)  Plaintiff's Tenth,
20  Eleventh, Twelfth, and Thirteenth Causes of Action purport to arise out of the named
21  defendants' authorship of memos used for the gang validation. (See Complaint at 22-
22  28.)  Although none of these causes of action specifies what constitutional right
23  plaintiff is alleging the authors of the memos violated, the Court presumes that these
24  causes of action also are intended as due process claims against the named
25  defendants.

26       The Supreme Court has held that the guarantee of due process under the Fifth
27  and Fourteenth Amendments applies only when a constitutionally protected liberty
28  or property interest is at stake. See Ingraham v. Wright, 430 U.S. 651, 672, 97 S. Ct.

1401, 51 L. Ed. 2d 711 (1977). The Supreme Court also has held that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." See Wilkinson v. Austin, 545 U.S. 209, 221, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005) (citing Meachum v. Fano, 427 U.S. 215, 225, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976)); see also Hewitt v. Helms, 459 U.S. 460, 466-67, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983) (holding that the Due Process Clause itself does not create a liberty interest in being confined to a general population cell, as opposed to "the more austere and restrictive administrative segregation quarters"), overruled in part on other grounds, Sandin v. Connor, 515 U.S. 472, 482-84, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995).

In Sandin, 515 U.S. at 483-84, the Supreme Court reaffirmed that a liberty interest in avoiding particular conditions of confinement may also arise from state prison regulations, but held that such state-created liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." It found that placement in administrative segregation for 30 days for a disciplinary infraction did not meet this standard. See id. at 487. However, in Wilkinson, 545 U.S. at 223-24, the Supreme Court held that indefinite placement in a restrictive "supermax" facility, where inmates were not eligible for parole consideration term, did impose an "atypical and significant hardship with the correctional context,"[2] and did give rise to a liberty interest in its

---

[2]    The conditions of confinement in Wilkinson were no less harsh than those experienced by plaintiff in SHU:

"Incarceration at OSP is synonymous with extreme isolation. In contrast to any other Ohio prison, including any segregation unit, OSP cells have solid metal doors with

(continued...)

6

1   avoidance. The Supreme Court concluded that the due process to which a prisoner
2   facing such confinement was entitled was (1) notice of the charges or reasons such
3   placement is being considered, (2) an opportunity to be heard, and (3) notice of any
4   adverse decision. See Wilkinson, 545 U.S. at 229 (relying on Greenholtz v. Inmates
5   of Nebraska Penal and Corr. Complex, 442 U.S. 1, 16, 99 S. Ct. 2100, 60 L. Ed. 2d
6   668 (1979), and Hewitt, 459 U.S. at 473-76); see also Bruce v. Ylst, 351 F.3d 1283,
7   1287 (9th Cir. 2003) (involving a California prisoner's due process challenge to his
8   gang validation and SHU housing).

9       Here, even assuming that plaintiff has a protected liberty interest with regard
10  to indefinite SHU placement, plaintiff's allegations and the exhibits attached to the
11  Complaint establish that plaintiff was afforded the foregoing due process protections.

12      In Bruce, 351 F.3d at 1287, the Ninth Circuit held that the prisoner's due
13  process claim challenging his gang validation and SHU housing was subject to the
14  "some evidence" standard of Superintendent v. Hill, 472 U.S. 445, 455, 105 S. Ct.
15  2768, 86 L. Ed. 2d 356 (1985). Further, the Ninth Circuit noted, "[u]nder Hill, we do
16  not examine the entire record, independently assess witness credibility, or reweigh
17  the evidence; rather, 'the relevant question is whether there is any evidence in the
18  record that could support the conclusion.'" Id.

19      Here, it is clear from the exhibits attached to the Complaint that there was some
20  evidence in the record that could support the conclusion that plaintiff had ties to the

21
22      [2](...continued)
23          metal strips along their sides and bottoms which prevent
24          conversation or communication with other inmates. All
            meals are taken alone in the inmate's cell instead of in a
25          common eating area. Opportunities for visitation are rare
26          and in all events are conducted through glass walls. It is
27          fair to say OSP inmates are deprived of almost any
            environmental or sensory stimuli and of almost all human
28          contact." Wilkinson, 545 U.S. at 214.

7

Mexican Mafia.  This included a confidential memorandum dated June 7, 2006 indicating that a confidential informant had identified plaintiff as "the Facility 3 shotcaller" at Richard J. Donovan Correctional Facility; a staff information report from a gang investigator dated April 23, 2009 explaining that "Shot Caller" is the term utilized by Southern Hispanic inmates to identify the Southern Hispanic in charge of the facility who is responsible for the collection of 1/3 of the illegal money collected for criminal activities conducted on behalf of the Mexican Mafia prison gang; a March 3, 2009 report documenting an outgoing letter written by a validated Mexican Mafia associate named Sarmiento in which Mexican Mafia business was communicated by plaintiff and Sarmiento; and a March 2, 2009 report documenting an outgoing letter written by plaintiff that described his past and future association with Sarmiento and another validated Mexican Mafia associate named Rojas. (See Exhibit C to Complaint.)

Federal due process is satisfied by a single source of sufficiently reliable information. See Bruce, 351 F.3d at 1288; Jimenez v. Whitfield, 2012 WL 244149, at *11 (E.D. Cal. Jan 25, 2012).  Moreover, due process only requires that there be "some evidence" in the record that could support the conclusion reached by the prison decision-makers, see Hill, 472 U.S. at 455–56; the evidence does not have to logically preclude any other conclusion, see id. at 457.  Finally, any allegation by plaintiff that he is not in fact an active associate of a gang, even if true, does not amount a due process violation because the fact that a prisoner may have been placed incorrectly in administrative segregation does not raise a due process issue; the Constitution demands due process, not error-free decision-making. See Stitt v. Wilber, 2012 WL 4801643, at *2 (N.D. Cal. Oct. 9, 2012) (citing Richer v. Leapley, 25 F.3d 1406, 1410 (8th Cir. 1994)).

The Court therefore finds that plaintiff's allegations are insufficient to state a due process claim against any of the named defendants based on their involvement in plaintiff's gang validation and/or their authorship of memos used for the gang

1  validation because plaintiff's allegations and the exhibits to the Complaint establish
2  that plaintiff was afforded all the process to which he was due.

4  **III.    Plaintiff's allegations are insufficient to state a § 1983 claim against any**
5         **of the named defendants based on their alleged violation of the consent**
6         **decree in Castillo v. Terhune.**

7      Plaintiff's Third Cause of Action purports to be based on defendants' alleged
8  violation of the terms of the final settlement agreement in Castillo v. Terhune, et al.,
9  Northern District of California Case No. C-74-2847 MJJ JCS. (See Complaint at 17.)
10      However, plaintiff's allegations regarding defendants' alleged violation of the
11  Castillo settlement agreement are insufficient to state a cognizable § 1983 claim
12  because, as the court explained in Garcia v. Stewart, 2009 WL 688887, at *7 (N.D.
13  Cal. Mar. 16, 2009), another Northern District of California case, in rejecting the
14  same claim:

15      "[A] remedial court decree does not provide a right secured by the
16      Constitution or laws of the United States, the violation of which is a
17      necessary element of a § 1983 claim. See West v. Atkins, 487 U.S. 42,
18      48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988). In particular, 'such
19      decrees are the means by which unconstitutional conditions are
20      corrected but [ ] they do not create or enlarge constitutional rights.'
21      Green v. McKaskle, 788 F.2d 1116, 1123 (5th Cir. 1986); see DeGidio
22      v. Pung, 920 F.2d 525, 534–35 (8th Cir. 1990) (holding, in reliance on
23      McKaskle, that consent decree requiring certain improvements in
24      conditions of confinement at state prison could not be enforced by way
25      of § 1983 action). Further, the Castillo settlement agreement itself
26      provides that alleged noncompliance with the agreement cannot be the
27      basis for granting an individual inmate relief regarding his gang
28      validation. (See Settlement Agreement ¶ 30c.)"

Accord, Chappell v. Fleming, 2012 WL 1414105, at *5 (E.D. Cal. Apr. 23, 2012); Jimenez v. Whitfield, 2012 WL 244149, at *5 (E.D. Cal. Jan. 25, 2012); Castro v. Prouty, 2011 WL 529493, at *4 (E.D. Cal. Feb. 3, 2011).

## IV.    Plaintiff's allegations are insufficient to state a § 1983 claim against any of the named defendants based on their involvement in plaintiff's administrative appeals.

Plaintiff's Seventh, Eighth, and Ninth Causes of Action purport to be based on the named defendants' involvement in plaintiff's administrative appeals, although plaintiff does not specify what constitutional right he is alleging these defendants violated. (See Complaint at 21-22.)

In any event, the Ninth Circuit has held that a prisoner has no constitutional right to an effective grievance or appeal procedure. See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), cert. denied, 541 U.S. 1063 (2004); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also, e.g., George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) (holding that only persons who cause or participate in civil rights violations can be held responsible and that "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation"); Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (holding that prison officials whose only roles involved the denial of the prisoner's administrative grievances could not be held liable under § 1983), cert. denied, 530 U.S. 1264 (2000); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) ("[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates."); Jimenez, 2012 WL 244149, at *6 ("Because there is no right to any particular grievance process, plaintiff cannot state a cognizable civil rights claim for a violation of his due process rights based on allegations that prison officials ignored or failed to properly process grievances."); Wright v. Shapirshteyn, 2009 WL 361951, *3 (E.D. Cal. Feb. 12, 2009) (noting that "where a defendant's only involvement in the allegedly

10

1 unconstitutional conduct is the denial of administrative grievances, the failure to
2 intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not
3 amount to active unconstitutional behavior for purposes of § 1983"); Velasquez v.
4 Barrios, 2008 WL 4078766, *11 (S.D. Cal. Aug. 29, 2008) ("An official's
5 involvement in reviewing a prisoner's grievances is an insufficient basis for relief
6 through a civil rights action.").

7       The Court therefore finds that plaintiff's allegations in his Seventh, Eighth, and
8 Ninth Causes of Action are insufficient to state a § 1983 claim against any of the
9 named defendants based on their involvement in plaintiff's administrative appeals.

10

11 **V.     Plaintiff's allegations are insufficient to state a First Amendment claim**
12 **against any of the named defendants.**

13       In his Fourteenth Cause of Action, plaintiff alleges that defendants have
14 violated his "limited First Amendment rights by promulgating, implementing and
15 enforcing rules and/or regulations that arbitrarily abrogate plaintiff's limited
16 constitutional rights of free association and speech."  Plaintiff further alleges that
17 "[s]aid rules and regulations afford plaintiff no adequate notice of who may or may
18 not be a gang associate." (See Complaint at 28.)

19       The Court finds that these conclusory allegations of the Fourteenth Cause of
20 Action are insufficient to satisfy plaintiff's pleading burden under Twombly and
21 Iqbal. See Manago v. Gonzalez, 2012 WL 6628902, at * 9 (E.D. Cal. Dec. 19, 2012)
22 (finding that substantially the same allegations as plaintiff is making here were
23 insufficient to satisfy plaintiff's pleading burden under Iqbal).  Plaintiff's First
24 Amendment claim also fails because prison regulations that impinge upon First
25 Amendment rights are valid if they are reasonably related to a legitimate penological
26 interest, such as prison security. See, e.g., Shaw v. Murphy, 532 U.S. 223, 229, 121
27 S. Ct. 1475, 1479, 149 L. Ed. 2d 420 (2001); Turner v. Safly, 482 U.S. 78, 89, 107
28 S. Ct. 2254, 96 L. Ed. 2d 64 (1987); Stefanow v. McFadden, 103 F.3d 1466, 1472

1  (9th Cir. 1996).  California's process of identifying suspected gang members and
2  associates and confining them in SHU consistently has been found by the Ninth
3  Circuit to serve legitimate penological interests.  See, e.g., Bruce, 351 F.3d at 1289
4  ("It is clear ... that prisons have a legitimate penological interest in stopping prison
5  gang activity."); Munoz v. Rowland, 104 F.3d 1096 (9th Cir. 1997) ("California's
6  policy of assigning suspected gang affiliates to the SHU is not a disciplinary measure,
7  but an administrative strategy designed to preserve order in the prison and protect the
8  safety of all inmates."); see also, e.g., East v. California Dept. of Corrections, 474
9  Fed. Appx. 582, 583 (9th Cir. 2012) (now citable for its persuasive value pursuant to
10  Ninth Circuit Rule 36-3) ("The district court properly dismissed [the plaintiff's] First
11  Amendment claim because the prison's reliance on evidence that [the plaintiff]
12  associated with gang members was reasonably related to legitimate penological
13  interests."); Ruiz v. Cate, 436 Fed. Appx. 760, 761 (9th Cir. 2011) (same).

14

15  **VI.**   **Plaintiff's allegations are insufficient to state an Eighth Amendment claim**
16         **against any of the named defendants in their individual capacities.**

17         In his Fifteenth Cause of Action, plaintiff alleges that defendants have violated
18  his Eighth and Fourteenth Amendment rights by "exposing him and his family to a
19  substantial risk of death or serious bodily harm from prison gangs by requiring
20  plaintiff to become an informant in order to be released from the SHU."  According
21  to plaintiff, "[d]efendants are fully aware of the risks and are deliberately indifferent
22  to the possible consequences to plaintiff and his family." (See Complaint at 28-29.)

23         A prison official's deliberate indifference to a substantial risk of serious harm
24  to an inmate's safety violates the Eighth Amendment.  See Farmer v. Brennan, 511
25  U.S. 825, 828, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); Redman v. County of
26  San Diego, 942 F.2d 1435, 1443 (9th Cir. 1991) (en banc).  The defendant must have
27  been aware of facts from which the inference could be drawn that a substantial risk
28  of serious harm existed, and must have actually drawn the inference.  See Farmer, 511

12

1  U.S. at 837.

2      Here, the Court finds that the conclusory allegations of the Fifteenth Cause of
3  Action are insufficient to satisfy plaintiff's pleading burden under <u>Twombly</u> and
4  <u>Iqbal</u>. <u>See also</u> <u>Cervantes v. Adams</u>, 2013 WL 491559, at *1 (9th Cir. Jan. 2, 2013)
5  (holding that district court had properly dismissed claim that confinement in the SHU
6  constituted cruel and unusual punishment because the plaintiff had failed to allege
7  facts sufficient to show that defendants knew of and disregarded an excessive risk of
8  harm to his health or safety).

9      In his Sixteenth Cause of Action, plaintiff claims that defendants have violated
10  his Eighth and Fourteenth Amendment rights by "maliciously and sadistically placing
11  and retaining plaintiff in the SHU despite their knowledge he is not an associate of
12  any gang." (<u>See</u> Complaint at 29.)

13      This Eighth Amendment claim fails because administrative segregation is
14  within the terms of confinement ordinarily contemplated by a sentence. <u>See</u> <u>Perkins</u>
15  <u>v. Crum</u>, 476 Fed. Appx. 136, at *1 (9th Cir. 2012) (affirming dismissal of Eighth
16  Amendment claim directed to conditions of confinement in SHU); <u>Pina v. Scavetta</u>,
17  467 Fed. Appx. 605, at *1 (9th Cir. 2012) (same); <u>Ruiz v. Cate</u>, 436 Fed. Appx. 760,
18  761(9th Cir. 2011) (same).

19                    *****************

20      Although the Court is dubious that plaintiff will be able to cure the deficiencies
21  of his Complaint, because plaintiff is proceeding <u>pro se</u>, the Court will afford plaintiff
22  an opportunity to attempt to do so. <u>See</u> <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448 (9th
23  Cir. 1987) (holding that a <u>pro se</u> litigant must be given leave to amend his complaint
24  unless it is absolutely clear that the deficiencies of the complaint cannot be cured by
25  amendment). Accordingly, the Complaint is dismissed with leave to amend.

26      If plaintiff still desires to pursue this action, he is **ORDERED** to file a First
27  Amended Complaint within thirty (30) days of the date of this Order remedying the
28  deficiencies discussed above.

If plaintiff chooses to file a First Amended Complaint, it should bear the docket number assigned in this case; be labeled "First Amended Complaint"; and be complete in and of itself without reference to the original Complaint or any other pleading, attachment or document.

The clerk is directed to send plaintiff a blank Central District civil rights complaint form, which plaintiff is encouraged to utilize.

**Plaintiff is admonished that, if he fails to timely file a First Amended Complaint, the Court will recommend that this action be dismissed with prejudice on the grounds set forth above and for failure to diligently prosecute.**

DATED:  March 18, 2013

_____
ROBERT N. BLOCK
UNITED STATES MAGISTRATE JUDGE

14